UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DERONE HILL HARRIS,

        Petitioner,

v.                                          CASE NO. 10-15088
                                            HONORABLE VICTORIA A. ROBERTS
LINDA TRIBLEY,

        Respondent.
_____/

## OPINION AND ORDER
## DENYING THE HABEAS CORPUS PETITION, AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

On December 22, 2010, petitioner Derone Hill Harris filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's

convictions for two counts of assault with intent to do great bodily harm less than

murder, one count of retaliating against a witness, and one count of possession of a

firearm during the commission of a felony (felony firearm).  Petitioner alleges that (1) the

exclusion of a *res gestae* witness at trial deprived him of a fair trial, (2) trial counsel was

ineffective for failing to seek an adjournment of the trial after he learned about the *res*

*gestae* witness, (3) the prosecutor presented insufficient evidence to support the assault

convictions, and (4) the prosecutor's closing arguments deprived him of a fair trial.

Respondent Linda Tribley argues in an answer to the petition that Petitioner's

fourth claim is procedurally defaulted and that Petitioner's remaining claims lack merit.

Procedural default is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606

(6th Cir. 2009), and the Court finds it more efficient to address the merits of Petitioner's

fourth claim than to analyze whether the claim is procedurally defaulted.  The Court therefore excuses the alleged procedural default and proceeds to address the substantive merits of Petitioner's claims.

## I.  BACKGROUND

Petitioner was charged with felony firearm, retaliating against a witness, and two counts of assault with intent to commit murder.  The charges arose from a shooting on Brentwood Street in Detroit on February 18, 2007.

Evidence showed that Petitioner believed the shooting victim, 21 year old Robert Johnson, to be a snitch.  Trial evidence established that at the beginning of this chain of events, Javare Goods fired a gun at Robert Johnson's car.  Goods was arrested. Robert Johnson testified at Goods' preliminary examination, which Petitioner attended. Goods was Petitioner's friend, and at Goods' preliminary examination, Petitioner glared at Robert Johnson.  Derek Harris was familiar to Robert Johnson as someone who hung out with his own younger brother.

On the day of the shooting, Robert Johnson saw Petitioner at a gas station. Petitioner called Robert Johnson a "snitch," and said "how you going to snitch on somebody that supposed to be your boy?"  Robert went home and told his mother what had happened.

About twenty-five minutes later, Robert left home with his mother.  As they drove slowly down Brentwood Street, they saw the Harris brothers and Deshawn Hardwick standing in the driveway of the Harris brothers' house.  Derek Harris was holding an assault rifle at his side.  Deshawn Hardwick was holding a small gun, and Petitioner was holding a nine-millimeter handgun.  Mrs. Johnson heard the three men call her son  a

2

racial epithet and say, "Shoot."  She saw both Derek Harris and Petitioner fire at the car where she and Robert were seated.  Several gunshots hit the car, and one gunshot grazed Robert's back.  The gunshots had two different sounds.

After the shooting, the three gunmen ran toward the back of the house, and Robert Johnson left the area.  Mrs. Johnson, however, got out of the car and yelled, "Y'all shot my car.  Y'all hurt my son."  Javare Goods' father, who was a state trooper, was behind Robert's car at the time, and he took Mrs. Johnson to the hospital to see whether Robert was there.

Robert, however, went to the police station after the shooting.  He tried to tell the police what had happened, but the officers would not let him talk.  They said he was too "hyper" and that he should take care of an outstanding arrest warrant for loitering before returning to the precinct.  Consequently, Robert did not make a report.  Several officers looked at his car, however, and although they initially put handcuffs on him, they released him about twenty minutes later.

On February 27, 2007, Police Officer Edward Sumler was investigating another matter when he learned from Robert Johnson that there had been an incident about two and a half weeks earlier.  Officer Sumler then looked at Robert's vehicle and noticed what appeared to be more than ten bullet holes inside and outside his car.  He detained a juvenile by the name of Hardwick, and, later in the investigative process, he was given the names Derone and Derek.

On May 18, 2007, Deshawn Hardwick's brother Devin called Robert Johnson a "snitch."  Robert then hit Devin Hardwick with his car and served several months in jail for his conduct.  On October 19, 2007, after his release from jail, he provided the police

3

with a written statement about the shooting that occurred on February 18, 2007.  He named Petitioner, Derek Harris, and Deshawn Hardwick as being involved in the shooting.  Deshawn Hardwick later pleaded guilty for his role in the shooting.

Neither Petitioner nor his brother testified or presented witnesses at trial. Petitioner's defense was that he was entitled to an acquittal because Robert Johnson was "untrustworthy, incredible, unreliable, a convict, and a flat out liar," someone who would "do anything and say anything to protect his interests."  (Trial Tr. Vol. II, 49, Jan. 30, 2008.)

On January 30, 2008, the jury acquitted Petitioner of assault with intent to commit murder and found him guilty on two counts of the lesser offense of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84.  The jury also found Petitioner guilty, as charged, on one count of retaliating against a witness, MICH. COMP. LAWS § 750.122(8), and one count of felony firearm, MICH. COMP. LAWS § 750.227b.

Petitioner filed a motion for new trial.  He alleged that the prosecution failed to notify the defense team that state trooper Thomas Goods was directly behind Robert and Rosalind Johnson's car at the shooting on February 18, 2007.  The trial court denied the motion.

The trial court sentenced Petitioner as a habitual offender to two years in prison for the felony firearm conviction, followed by concurrent terms of four to fifteen years in prison for the assault and retaliation convictions.  The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion, *see People v. Harris*, No. 284645, 2009 WL 2426310 (Mich. Ct. App. Aug. 6, 2009), and on January 27, 2010, the Michigan Supreme Court denied leave to appeal because it was not

4

persuaded to review the issues.  *See People v. Harris*, 485 Mich. 1052 (2010) (table).

Petitioner filed his habeas corpus petition through counsel on December 22, 2010.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*,

__ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not

grant a state prisoner's application for the writ of habeas corpus unless the state court's

adjudication of the prisoner's claims on the merits

>     (1)     resulted in a decision that was contrary to, or involved an
>             unreasonable application of, clearly established Federal law,
>             as determined by the Supreme Court of the United States; or
>
>     (2)     resulted in a decision that was based on an unreasonable
>             determination of the facts in light of the evidence presented
>             in the State court proceeding.

28 U.S.C. § 2254(d).

>     Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
>     may grant the writ if the state court arrives at a conclusion opposite to that
>     reached by [the Supreme] Court on a question of law or if the state court
>     decides a case differently than [the Supreme] Court has on a set of
>     materially indistinguishable facts.  Under the "unreasonable application"
>     clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the
>     state court identifies the correct governing legal principle from [the
>     Supreme] Court's decisions but unreasonably applies that principle to the
>     facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).

"A state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S.

652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's

contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75

(2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must

show that the state court's ruling on his or her claim "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." *Id.* at 786-87.

### III. DISCUSSION

### A. The Exclusion of a Witness

Petitioner claims that the trial court erroneously denied his motion for new trial,

which was based on the prosecution's alleged failure to discover and disclose a *res*

*gestae* witness. The witness was Michigan State Trooper Thomas Goods, who took

Rosalind Johnson to the hospital after the shooting on February 18, 2007. Petitioner

claims that the prosecution had a duty to investigate the facts and reveal all relevant

evidence, including the fact that Trooper Goods was behind the complaining witnesses

at the crime scene. Petitioner contends that the prosecutor's failure to inform him about

Trooper Goods deprived him of due process and his right to present a complete

defense to the crimes. The Michigan Court of Appeals found no merit in Petitioner's

claim.

### 1. Clearly Established Federal Law

"Under *Brady* [*v. Maryland*, 373 U.S. 83 (1963)], the State violates a defendant's

right to due process if it withholds evidence that is favorable to the defense and material

to the defendant's guilt or punishment." *Smith v. Cain*, __ U.S. __, __, 132 S. Ct. 627,

630 (2012).  But Petitioner bears the burden of showing that the prosecution

suppressed evidence.  *Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012) (citing *United*

*States v. Warshak*, 631 F.3d 266, 300 (6th Cir. 2010)), *cert. denied*, __ S. Ct. __, No.

12-9585, 2013 WL 1346367 (U.S. June 3, 2013).  To state a true *Brady* violation, he

must demonstrate that (1) the evidence at issue was favorable to him, either because it

was exculpatory or impeaching, (2) the State suppressed the evidence, either willfully or

inadvertently, and (3) prejudice ensued.  *Strickler v. Greene*, 527 U.S. 263, 281-82

(1999).  "So long as favorable evidence could very well affect the jury's decision,

prosecutors *must* disclose it.  And when they fail to do so, courts have a duty to order a

retrial, allowing a jury to consider the previously concealed evidence."  *United States v.*

*Tavera*, __ F.3d __, __, No. 11-6175, 2013 WL 3064599, at *1 (6th Cir. June 20, 2013).

### 2. Application

At trial, Rosalind Johnson testified that she called Trooper Goods on her cell

phone before leaving home on the night of the shooting.  According to her, Trooper

Goods followed her and Robert when they left home, and he was directly behind the

Johnsons' vehicle when the defendants fired at them.  Trooper Goods took her to the

hospital to look for Robert.  (Trial Tr. Vol. I, 200-02, 214, Jan. 29, 2008.)  She thought

that she had mentioned Trooper Goods to the police when she gave a statement; (*id.* at

208-09), but at the hearing on Petitioner's motion for new trial, she admitted that, before

trial, she never told the prosecutor or the officer in charge of the case about Trooper

Goods.  She further admitted that the first time she talked about Trooper Goods was at

trial in response to one of the defense attorney's question.  (Mot. Hr'g, 12-13, Feb. 27,

7

2008.)

The officer in charge of the case, Joseph Rocha, testified at the post-conviction hearing that neither Mrs. Johnson, nor anyone else, told him that Trooper Goods may have been at the scene of the crime.  (Evidentiary Hr'g 4, 6-7, Feb. 29, 2008.)  Officer Rocha was familiar with Trooper Goods due to an unrelated matter, and because Trooper Goods did not respond to the messages that Officer Rocha left for him, Rocha had the impression that Goods was evading him.  (*Id.* at 9.)

The prosecutor made an offer of proof at the hearing and stated that, although Mrs. Johnson had given her a first name and some information about a state trooper, that information pertained to Trooper Goods' gift of money or a car to Robert Johnson after Javare Goods shot up Robert's car.  The prosecutor had no memory of anybody saying that Trooper Goods was at the crime scene on February 18, 2007.  In fact, she claimed to have been just as surprised as anyone else at trial when Mrs. Johnson testified that Trooper Goods had been there.

The prosecutor explained at the hearing that Trooper Goods was facing criminal charges on an unrelated matter and was entitled to invoke his Fifth Amendment rights in Petitioner's case for dereliction of duty at the scene of the crime.  (*Id.* at 12-13, 17-18, 20-21, 23.)  Counsel for Derek Harris conceded at the evidentiary hearing that he and counsel for Petitioner had failed to establish that the prosecutor knew, prior to Mrs. Johnson's testimony at trial, that Trooper Goods was present at the crime scene.  (*Id.* at 31.)

The trial court ruled that the attorneys knew something about Trooper Goods, but that neither side knew Goods was an eyewitness to the crime and that Goods' presence

8

at the scene was a surprise to everyone.  The trial court concluded that there was no misconduct on the part of the police or the prosecution.  And, because Trooper Goods was facing criminal charges and was not being cooperative, the trial court opined that the result of the proceeding would not have been different if Goods had testified. Accordingly, the trial court denied Petitioner's motion for new trial.  (*Id.* at 37-38.)  The Michigan Court of Appeals subsequently held that the trial court did not abuse its discretion by denying the motion.

The state appellate court's decision was objectively reasonable because the record indicates that, prior to trial, the prosecutor, her predecessor, and the police knew nothing about Trooper Goods being at the crime scene.  Thus, Petitioner has failed to show that the prosecutor suppressed evidence.

Petitioner also has not demonstrated that the evidence at issue was favorable to him and that prejudice ensued as a result of the exclusion of Trooper Goods as a witness.  It is mere speculation that Trooper Goods would have testified in Petitioner's favor or would have had anything significant to say in an interview with defense counsel. It is just as likely that Goods would have refused to testify or would have confirmed what Robert and Rosalind Johnson observed.

Furthermore, Petitioner and his attorney became aware at trial that Trooper Goods was present at the crime scene.  *Brady* generally applies only to a complete failure to disclose, not to delayed disclosure of exculpatory information.  *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002).  "If previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure."  *United States v. Word*, 806 F.2d 658, 665 (6th

9

Cir. 1986). Because it is not known whether Trooper Goods would have helped the defense, Petitioner has not demonstrated that he was prejudiced by the delay in disclosing information about Trooper Goods being at the scene of the crime.

For these reasons, the Court finds that Petitioner failed to allege a true *Brady* claim; he has no right to relief on this claim.

## B.  Trial Counsel

In a related claim, Petitioner alleges that his trial attorney should have requested a continuance when he discovered that Trooper Goods followed the complaining witnesses to the crime scene. Petitioner asserts that, not requesting a continuance amounted to ineffective assistance, because his attorney could have interviewed Trooper Goods during an adjournment in the trial to determine what Trooper Goods may or may not have seen. Petitioner contends that his attorney might have been able to obtain exculpatory information from Trooper Goods, and even if the information obtained were harmful to his case, he could have formulated a different or more complete defense.

The Michigan Court of Appeals concluded that Petitioner did not preserve his claim for appellate review, because he did not move for a new trial based on effective assistance of counsel, nor request an evidentiary hearing on his claim. Nevertheless, the Court of Appeals concluded that Petitioner's claim lacked merit because he could not overcome the presumption that counsel's decision to proceed with trial was a matter of sound trial strategy.

### 1.  Clearly Established Federal Law

To prevail on his trial counsel claim, Petitioner must show that his attorney's

10

"performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### 2. Application

The record indicates that trial counsel made a strategic decision not to request a continuance. Instead, he chose to attack Trooper Goods' character and Robert Johnson's credibility by claiming that Goods paid Robert Johnson not to proceed with the trial against Trooper Goods' son, Javare Goods. (Trial Tr. Vol. II, 48, Jan. 30, 2008.) Trial counsel also pointed out that Robert Johnson had given inconsistent testimony by testifying on direct examination that the Goods family gave him money for the damage done to his car, but testifying on cross-examination that the family gave him another car as compensation. (*Id.* at 48-49.) Additionally, trial counsel pointed out that Robert Johnson never mentioned anything about Trooper Goods being behind him at

11

the shooting.  According to trial counsel, Robert failed to mention that fact at the preliminary examination, in his statement to the police, and at trial.  (*Id.* at 55.)  In light of the manner in which trial counsel used the information about Trooper Goods, the Michigan Court of Appeals reasonably concluded that Petitioner had not overcome the presumption that counsel's decision to proceed with trial was a matter of sound trial strategy.

Even if trial counsel had requested and been given a continuance, it is mere speculation that Trooper Goods' observations or lack of them would have helped Petitioner formulate a better defense.  Thus, Petitioner has failed to show that his attorney's failure to seek a continuance of trial to interview Trooper Goods prejudiced him.  And because the possibility existed that Trooper Goods would have refused to testify on grounds that he might incriminate himself,[1] the state appellate court's decision that trial counsel was not ineffective was objectively reasonable.

## C.  The Sufficiency of the Evidence

The third habeas claim alleges that the evidence at trial was insufficient to support Petitioner's convictions for assault with intent to do great bodily harm less than murder.  Petitioner points out there was no physical evidence linking him to the crime, and although Robert Johnson was struck with a bullet, the bullet merely grazed his back, leaving little or no mark on his body.  Petitioner argues that the lack of a serious or permanent injury is an indication that he lacked the necessary intent to be found

---

[1] Trooper Goods may have been guilty of dereliction of duty at the crime scene. And, as noted above, there also was some indication at trial that he may have engaged in illegal activity by giving money or a car to Robert Johnson to prevent Robert from testifying in Javare Goods' criminal case.

12

guilty of assault with intent to do great bodily harm less than murder. Petitioner also contends that the complaining witnesses were not credible. The Michigan Court of Appeals rejected Petitioner's claim and concluded that the prosecution presented sufficient evidence for a rational trier of fact to conclude that Petitioner committed two counts of assault with intent to do great bodily harm less than murder.

### 1. Clearly Established Supreme Court Precedent

The relevant question on habeas corpus review of a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

> "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. . . . And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U. S. __, __, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, __ U.S. __, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*).

### 2. Application

In Michigan, "[t]he elements of assault with intent to do great bodily harm less than murder are: '(1) an attempt or threat with force or violence to do corporal harm to

13

another (an assault), and (2) an intent to do great bodily harm less than murder.'"

*People v. Brown*, 267 Mich. App. 141, 147 (2005) (footnote and emphasis omitted)

(quoting *People v. Parcha*, 227 Mich. App. 236, 239 (1997)).  "The intentional discharge

of a firearm at someone within range is an assault," *People v. Johnson*, 54 Mich. App.

303, 304 (1974), and the Michigan Court of Appeals "has defined the intent to do great

bodily harm as 'an intent to do serious injury of an aggravated nature.'" *Brown*, 267

Mich. App. at 147 (quoting *People v. Mitchell*, 149 Mich. App. 36, 39 (1986) (citing

*People v. Ochotski*, 115 Mich. 601, 608 (1898)).

Both Robert and Rosalind Johnson recognized Petitioner on the night of the

crime, and both testified that Petitioner was armed with a gun that night.  According to

Mrs. Johnson, Petitioner and his companions used a racial slur when they saw her and

Robert and said, "Shoot."  Then, according to her, both Petitioner and his brother raised

their guns and fired them at her and her son.

Robert heard seven or eight gunshots from what appeared to be two different

guns.  One of the gunshots grazed Robert, and several other gunshots struck his car.

Robert could distinguish the sound of two different guns.  The fact that Robert was not

seriously hurt and that most of the bullets missed the victims does not negate the intent

element; actual physical injury is not required for the elements of the crime to be

established. *People v. Harrington*, 194 Mich. App. 424, 430 (1992).  Physical evidence

also is not required to sustain a conviction, *Davis*, 306 F.3d at 409, and "[a]n

assessment of the credibility of witnesses is generally beyond the scope of federal

habeas review of sufficiency of evidence claims."  *Matthews v. Abramajtys*, 319 F.3d

780, 788-89 (6th Cir. 2003) (citing *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000)).

14

In conclusion, a rational juror could have inferred from the evidence that Petitioner assaulted the complaining witnesses and intended to do great bodily harm. Thus, there was sufficient evidence to support Petitioner's convictions for assault with intent to do great bodily harm less than murder. The state appellate court's determination that the evidence was sufficient to sustain Petitioner's convictions was not contrary to, or an unreasonable application of, *Jackson*.

### D. The Prosecutor

The final habeas claim alleges that the prosecutor's closing arguments deprived Petitioner of his right to a fair trial. Specifically, Petitioner argues that the prosecutor vouched for the credibility of the complaining witnesses and violated his rights under the Fifth Amendment by directing the jury's attention to his failure to testify. Petitioner also alleges that his trial attorney was ineffective for failing to object to one of the prosecutor's remarks.

The Michigan Court of Appeals reviewed Petitioner's prosecutorial misconduct claim for "plain error" because Petitioner did not preserve his claim for appellate review by objecting at trial to the alleged misconduct. The Court of Appeals went on to conclude that the prosecutor's conduct was not improper and that Petitioner could not demonstrate plain error affecting his substantial rights.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). A reviewing court may grant relief only when the prosecutor infringes on specific provisions of the Bill of Rights or infects the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To prevail on his

claim, Petitioner must show that the prosecutor's arguments were so egregious "as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). Federal courts in this Circuit

> apply a "two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render [the petitioner's] trial fundamentally unfair." *Irick v. Bell*, 565 F.3d 315, 324 (6th Cir. 2009). [Courts] first determine whether the prosecution's conduct was improper. *Id.* Second, [courts] determine whether that improper conduct was flagrant by considering four factors: "(1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.* (internal quotation marks omitted).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 311 (2012).

### 1. Vouching

Petitioner claims that the prosecutor vouched for Rosalind Johnson's credibility during closing arguments. Petitioner maintains that the comments were prejudicial and deprived him of a fair trial. The Michigan Court of Appeals disagreed and concluded that the prosecutor did not commit misconduct by commenting on Mrs. Johnson's credibility.

> A prosecutor engages in improper vouching
>
> "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor] behind that witness." [*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)]. This generally involves either blunt comments asserting personal belief, or comments that imply special knowledge of facts not before the jury or the credibility or truthfulness of the witness. *Id.*

*United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010).

At Petitioner's trial, the prosecutor said:

16

I am going to suggest to you, ladies and gentleman, that just because somebody may not have a big formal education and understand a lot of flowery language, that it doesn't make them dumb.  It doesn't make them, not know who shot at them.

Some of the smartest people around can't read and write, and anybody, even a dog knows when they are being kicked on purpose or tripped over accidentally.  So don't let somebody put in your mind that because Miss Johnson might not be sophisticated, she doesn't know who shot at her, or that she doesn't deserve justice because somebody shot at her.  Keep that in mind.

(Trial Tr. Vol. II, 15-16, Jan. 30, 2008.)

Petitioner claims that the jury could have inferred from these remarks that everything Rosalind Johnson said was true because the prosecutor was insisting that Rosalind Johnson should be believed, no matter how unsophisticated she might appear. The prosecutor, however, did not indicate a personal belief in Mrs. Johnson's credibility. Nor did the prosecutor imply that she had special knowledge about Mrs. Johnson.  She was merely saying that even an unsophisticated and uneducated person deserves justice and is capable of knowing what happened.  Thus, the prosecutor's comments were proper.

Even if the remarks were improper, they were not flagrant.  The evidence against Petitioner was strong, and the trial court instructed the jurors at the beginning and at the end of the trial that the attorneys' arguments were not evidence, but were meant to help the jurors understand the evidence and each side's theories.  The trial court also explained to the jurors how to evaluate the credibility of witnesses, and the court stated that the jurors could reject some or all of what the witnesses said.  (Trial Tr. Vol. I, 54-57, Jan. 29, 2008; Trial Tr. Vol. II, 70-74, Jan. 30, 2008.)  Therefore, Petitioner has no right to relief on his claim that the prosecutor vouched for Rosalind Johnson's credibility.

17

### 2.  Commenting on Petitioner's Failure to Testify

Petitioner asserts that the prosecutor violated his rights under the Fifth Amendment by commenting on his decision not to testify.  The Michigan Court of Appeals concluded on review of this claim that Petitioner had failed to demonstrate that the prosecutor engaged in misconduct and that the alleged misconduct affected the outcome of the case.

"[A] criminal defendant has an 'absolute right not to testify.'"  *Salinas v. Texas*, __ U.S. __, __. 113 S. Ct. 2174, 2179 (2013) (quoting *Turner v. United States*, 396 U.S. 398, 433 (1970) (Black, J., dissenting)).  And "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  *Griffin v. California*, 380 U.S. 609, 615 (1965).  This rule "applies to indirect as well as direct comments on the failure to testify."  *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983).

At issue here is the prosecutor's comment during her rebuttal argument that "every one of you knows that today is the date for [the defendants] to step up to the plate and be accountable for their behavior . . . ."  (Trial Tr. Vol. II, 64, Sept. 30, 2008.) Petitioner claims that, because only he and his co-defendant could have refuted the complaining witnesses' version of what happened, the jury could have interpreted the prosecutor's comment to be a reference to his and his co-defendant's failure to testify at trial.  Petitioner contends that the remark was an attempt to persuade the jury to convict him on the basis that his silence at trial was an admission of guilt.

The prosecutor made a similar remark during her initial closing argument, saying,

18

> Today is the day.  Today is the day for these two men to take
> responsibility for their behavior.  That's what this is about.  And that's up to
> you now to do that.

(*Id.* at 28.)  Those remarks were prefaced by references to Deshawn Hardwick, who

pleaded guilty for his participation in the shooting incident, and Robert Johnson, who

went to jail as a result of hitting Deshawn's brother with his car.  The prosecutor was

saying that both Deshawn and Robert took responsibility for their conduct and that the

defendants, likewise, should take responsibility for their behavior.

At no time did the prosecutor mention Petitioner's silence or failure to testify.

The Court disagrees with Petitioner's contention that the jury would reasonably infer

from the prosecutor's remarks that Petitioner's failure to testify was an admission of

guilt.  The prosecutor was arguing that the defendants should be held accountable for

their crimes.

Furthermore, defense counsel informed the jurors that Petitioner did not have to

testify or do anything (*id.* at 44), and the trial court instructed the jurors at the beginning

of the trial that the defendants were presumed innocent and were not required to testify,

prove their innocence, produce evidence, or do anything.  (Trial Tr. Vol. I, 33-34, 54,

Jan. 29, 2008.)  At the close of the trial, the court charged the jurors not to let their

verdict be affected by the fact that the defendants did not testify.  The court explained

that each defendant had the absolute right not to testify.  (Trial Tr. Vol. II, 75-76, Jan.

30, 2008.)  "[J]uries are presumed to follow their instructions."  *Richardson v. Marsh*,

481 U.S. 200,  211 (1987).

To conclude, Petitioner's Fifth Amendment right not to have the prosecutor

comment on his silence was not violated, and the state appellate court's decision on

19

Petitioner's claim was objectively reasonable.  Consequently, Petitioner is not entitled to habeas relief on the basis of the prosecutor's comment about it being time for Petitioner to "step up to the plate."

### 3.  Trial Counsel's Failure to Object

Petitioner argues that his trial attorney was ineffective for failing to object to the prosecutor's comment that "today is the date for them to step up to the plate and be accountable for their behavior."  The Michigan Court of Appeals determined that an objection to the prosecutor's argument would have been overruled because the prosecutor did not commit misconduct.  The Court of  Appeals concluded that Petitioner's ineffective-assistance-of-counsel claim lacked merit.

This Court agrees with the Michigan Court of Appeals.  The prosecutor did not comment on Petitioner's silence or failure to testify.  It follows that defense counsel was not ineffective for failing to object to the prosecutor's comment.  An attorney is not ineffective for failing to make a meritless objection.  *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).

### IV.  CONCLUSION

The state appellate court's adjudication of Petitioner's claims did not result in a decision that was contrary to Supreme Court precedent, an unreasonable application of, Supreme Court precedent, or an unreasonable determination of the facts.   Accordingly, the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

The Court declines to issue a certificate of appealability; reasonable jurists would not disagree with the Court's resolution of Petitioner's constitutional claims, nor

conclude that the issues presented are adequate to deserve encouragement to proceed

further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS ORDERED.**


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 12, 2013

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 12, 2013.<br><br>s/Linda Vertriest<br>Deputy Clerk |